I am Sir, very respectfully, your most obedient servant,
*Nicholas Ridgely.*

## CHARLES THOMAS v. GEORGE McCALLMONT and ELI EVANS.

Court of Chancery. New Castle. In Vacation. October, 1825.

*Ridgely's Notebook V, 9.*

BY THE CHANCELLOR. This cause came on for hearing at March, 1827, when it was submitted by the counsel on both sides, to the Chancellor, without argument, upon the bill, answers and depositions, although the depositions had not been returned in time; so that it has been considered as other cases

which are heard where the pleadings are regularly filed, depositions returned in due time, publication passed, and the cause set down or taken up for hearing after issue joined.

The object of this bill is that the complainant may obtain a discount for the board of his uncle, John McCallmont and Hannah, his wife, from about the 26th September, 1820, until about the 25th March, 1824, that is, for about three years, five months and twenty-nine days, at the rate of two hundred dollars a year, or four dollars a week, amounting, as charged in the bill, to $791.27, against the bond made by Charles Thomas to George McCallmont, one of the defendants, on the 23rd December, 1823, for the real debt of $897.92, with interest, and assigned to Eli Evans, the other defendant, the 16th March, 1825.

The whole of this claim for board had not accrued when the bond was executed, but if George McCallmont had agreed with Charles Thomas to pay for the board of John McCallmont and his wife, that is, if he had originally become the debtor for this board, and John McCallmont was not at all liable, this would have been an original promise, and the debt might be recovered or set off against this bond; otherwise, if it had been the debt of John McCallmont originally, for then it would have been within the Act of Assembly about contracts and assumptions, 1 Del.Laws 327, and must have been supported by some memorandum or note in writing, signed by the said George McCallmont. But the bill steers clear of any difficulty on that ground, for, although it seems that the complainant invited John McCallmont and his wife to reside in his house for a short time only, yet it is alleged that George McCallmont soon after came to New Castle, and to induce the complainant to consent to a longer residence and consider them as boarders, promised to pay to complainant for their board, at the rate of two hundred dollars a year, or four dollars a week, as long as they should continue to reside with him.

The proof of this promise, as complainant alleges, rested with Doctor James McCallmont, and with the said John McCallmont and Hannah, his wife. Doctor McCallmont died in September, 1824; and the bill states that the only surviving persons whom the said George informed of his promise, as far as the complainant had been able to learn, live out of this state, and in the State of Pennsylvania, beyond the compulsory process of this state, and could not be obliged to give testimony; and that they are dependent upon the said George McCallmont; and that it is probable that they would not make voluntary depositions; and no tribunal exists in Pennsylvania to compel a discovery by a defendant. The persons here referred to are supposed to be

the said John McCallmont and Hannah, his wife. To obtain a discovery of the contract as charged in the bill, this bill has been filed, and the whole matter is now brought to a point between these parties, to ascertain whether such a contract was ever made. George McCallmont in his answer positively denies it. Eli Evans knows nothing of it; and the proof by witnesses does not bring it home to the defendant, George [McCallmont].

In May, 1826, Miss Sally McCallmont, in going to Philadelphia with the defendant, heard him speak on the subject, but he did not say he was to pay their board, and she could not recollect distinctly what he did say. But she has the impression that he was to pay the board of John and his wife; but she knows not how she derived that impression, and she is not able to fix upon any fact which leads her to state why they should consider themselves boarders, or why the complainant should.

Mrs. Kean's testimony rather bears against the idea of a contract, but she really knows nothing in relation to it, and only mentions circumstances which seem to be at variance with such a notion.

Mrs. Read, the sister of the complainant, has no knowledge of her own on the subject, and therefore cannot establish the charge against the defendant, George McCallmont.

Hannah McCallmont, wife of the said John, says that George McCallmont never told her that he had agreed to pay the complainant for their board, or that he would pay it, or in any manner gave her to understand that such was his intention. But still the impression made on her mind was that George had said he would pay their board, two hundred dollars a year, to the complainant, but that he (complainant) would not accept it, or if he did, he would give it to them. That this impression was not made by anything that George had said, or did; but that the whole of this impression was derived from her husband, she never having had any conversation with George on the subject. And in speaking of her own opinion she certainly did not expect or intend to pay for their board. And she says that she derived no information as to the payment for board directly or indirectly from George McCallmont. But she states that her husband informed her that the defendant, George, had offered to pay for her board for a short time, and that she mentioned this to the complainant, who said that he would not accept it; that they were not boarders, and that they were welcome. And she has no doubt in her mind that, up to the time of executing the bond and after the complainant returned home, he had no intention of charging for their board. This witness proves

nothing like a contract; and when she speaks her own opinion, she is explicit that she and her husband did not consider themselves as boarders, but that they resided on the courtesy of the complainant.

Ann C. Sword, a witness to the bond, proves nothing as to any contract about board.

John McCallmont, to the fourth interrogatory, answers that from nine months to a year after he and his wife went to reside with the complainant, George McCallmont came to New Castle, and George informed him that he would allow him two hundred dollars, to pay their board; that the witness mentioned this to the complainant, who, in reply, said that he would not receive a cent, that they were no trouble and might remain there as long as they pleased. And he negatives any declaration of George that he had agreed with Mr. Thomas to pay for their board. And he disavows any idea that any compensation was to be made to Mr. Thomas, and denies that he ever told Mr. Thomas that George would pay for their board.

James B. Sword says that Mr. Thomas asked George McCallmont, when he was about to execute the bond, whether he would make an allowance for the board of John McCallmont and his wife, and that he replied he would not, that he considered their services a sufficient compensation.

From the whole of the testimony of the witnesses it cannot be collected that George McCallmont made any contract with the complainant for the payment of the board of John and his wife. The impression which some of them entertained, and particularly Sally McCallmont, and Hannah McCallmont, must have arisen from the suggestion made by George to John that he would allow him two hundred dollars to pay for his and his wife's board, which they probably had heard of, and which indeed had been communicated by John to his wife, but they all deny any knowledge of a contract made by the complainant and this defendant to this effect; and indeed the bill is grounded on this want of knowledge in most of these witnesses, and it relied upon a discovery to be obtained from the defendant.

Therefore as no proof is made in the cause to warrant the interposition of this Court, and as the answer positively denies any such contract, the writ of injunction must be dissolved, and the bill be dismissed with costs to the defendants.